**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARIO ZAJA,**

                                        **Plaintiff,**

        **vs.**                                                **5:20-CV-337**
                                                               **(MAD/TWD)**

**SUNY UPSTATE MEDICAL UNIVERSITY/UPSTATE**
**HEALTHCARE CENTER,**

                                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**JOHN C. LUKE, JR.**                          **JOHN C. LUKE JR., ESQ.**
445 Broad Hollow Road, Suite 419
Melville, New York 11747
Attorneys for Plaintiff

**NEW YORK STATE ATTORNEY**                    **JORGE A. RODRIGUEZ, AAG**
**GENERAL – ALBANY**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        On March 24, 2020, Plaintiff, Mario Zaja, initiated this suit against SUNY Upstate

Medical University/Upstate Healthcare Center.  *See* Dkt. No. 1.  Plaintiff asserts claims under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging a hostile work

environment, gender and sex discrimination, and retaliation.  *See id.* at ¶¶ 68-87.  Currently before

the Court is Defendant's motion for summary judgment.  *See* Dkt. No. 32.  For the following

reasons, Defendant's motion is granted in part and denied in part.

1

## II. BACKGROUND

Defendant SUNY Upstate Medical University/Upstate Healthcare Center is a general hospital located in Syracuse, New York. Dkt. No. 35-1 at ¶ 1. Defendant contracts with Cynet Systems, Inc., to provide temporary staffing. *Id.* at ¶ 12. Cynet recommended Plaintiff to fill an open phlebotomist position with Defendant. *Id.* at ¶ 19.[1]

On or about September 4, 2018, Plaintiff began working for Defendant. *Id.* at ¶ 24. Pursuant to his employment contract, Plaintiff's placement was scheduled to end on December 30, 2018. *Id.* at ¶ 25. Plaintiff contends that Defendant told him that the position was for a longer term and that the contract "gets automatically renewed." Dkt. No. 35-3 at 17. At some point before his placement ended, Plaintiff's placement was extended from December 30, 2018, to January 31, 2019. Dkt. No. 35-1 at ¶ 26.

On December 13, 2018, Plaintiff filed an internal complaint to Defendant's Office of Diversity and Inclusion alleging sexual harassment. *Id.* at ¶ 60. Plaintiff alleged that two female staff members, Schelitta Sewell and Demetria Huddleston, were sexually harassing him. *Id.* at ¶ 61. Plaintiff claimed that they were "rubbing on [him]." *Id.* Plaintiff later stated that they "brushed up against him, … rubbed one or both… [of] their breasts against him, …[and] rubbed their hands against his buttocks." *Id.* at ¶ 62.

Upon receipt of Plaintiff's complaint, Defendant initiated an investigation. *Id.* at ¶ 68. Lewis E. Rosenthal interviewed Plaintiff on December 17, 2018. *Id.* at ¶ 69. Throughout the month of January, Mr. Rosenthal also interviewed Ms. Sewell, Ms. Huddleston, six potential witnesses that worked in the phlebotomy laboratory, a potential witness in the adjoining unit, and

---

[1] The parties dispute whether Plaintiff was an employee of Cynet, Defendant, or both. *See* Dkt. No. 35-1 at ¶ 27.

Plaintiff's off-site supervisor. *Id.* at ¶ 80; Dkt. No. 32-4 at 114. In addition to Ms. Sewell and Ms. Huddleston, the other eight individuals that were interviewed did not corroborate Plaintiff's claims. *Id.* at ¶¶ 81, 82. Because of the witnesses' statements, Mr. Rosenthal concluded that Plaintiff's claim of sexual harassment was not credible and could not be substantiated. *Id.* at ¶ 90; Dkt. No. 32-4 at 4-6.

On December 23, 2018, ten days after Plaintiff's complaint of sexual harassment but before the conclusion of the investigation, Plaintiff was informed that Defendant would not further extend his temporary contract. *Id.* at ¶ 91. Plaintiff contends that his temporary employment contract was not renewed because of his complaint regarding sexual harassment. *Id.* Defendant contends that Plaintiff's contract was not renewed because he had poor performance, unrelated behavioral issues in the workplace, and requested several months off work to study for the MCATs. *Id.* at ¶¶ 101-103.

### III. DISCUSSION

**A.    Legal Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir. 1997) (citation omitted). Moreover, the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252. "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' … and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

**B.     Hostile Work Environment**

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or

pervasive, that is, ... the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex,'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). In addition to establishing a hostile work environment, a plaintiff must also establish that the conduct which created the hostile situation can be imputed to the employer. *See Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992). "In a situation such as this, 'when the harassment is attributable to a coworker, rather than a supervisor, … the employer will be held liable only for its own negligence.'" *Russell v. N.Y. Univ.*, 739 Fed. Appx. 28, 30 (2d Cir. 2018) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)). Defendant argues that the conduct which Plaintiff alleges is not severe or pervasive. Alternatively, Defendant argues that the conduct cannot be imputed to it.

### *1. Severe or Pervasive*

To establish that a work environment is objectively hostile, "a plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Wireless Commc'ns*, 618 F.3d 112, 119 (2d Cir. 2010) (emphasis in original). In order to be considered pervasive, a plaintiff must show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan v. Metro. Opera Assoc.*, 192 F.3d 310, 318 (2d Cir. 1999) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v. Purcell Const. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (finding five "crude and offensive" gender-based comments were "neither pervasive nor severe"). As for severity, the "ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

"The types of workplace conduct that may be actionable on a claim for hostile work environment based on sex 'include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" *Seale v. Madison Cnty.*, 929 F. Supp. 2d 51, 66 (N.D.N.Y. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The Second Circuit has stated the circumstances to consider include:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012).

"The line between complaints that are easily susceptible to dismissal as a matter of law and those that are not is indistinct." *Redd*, 678 F.3d at 177. "'On one side lie [complaints of] sexual assaults; [other] physical contact[, whether amorous or hostile, for which there is no consent express or implied]; uninvited sexual solicitations; intimidating words or acts; [and] obscene language or gestures. … On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.'" *Id.* (quoting *Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998) (internal quotation marks omitted)) (alterations in original). For example, the Second Circuit has stated that

> Casual contact that might be expected among friends—[a] hand on the shoulder, a brief hug, or a peck on the cheek—would normally be unlikely to create a hostile environment in the absence of aggravating circumstances such as continued contact after an objection. … And [e]ven more intimate or more crude physical acts—a hand on the thigh, a kiss on the lips, a pinch of the buttocks—may be considered insufficiently abusive to be described as 'severe' when they occur in isolation. … But when the physical contact surpasses what (if it were consensual) might be expected between friendly coworkers … it becomes increasingly difficult to write the conduct off as a pedestrian annoyance.

*Redd*, 678 F.3d at 177.  "[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment."  *Redd*, 678 F.3d at 177.

Here, a reasonable jury could conclude that the conduct was severe.  Plaintiff testified that two co-workers would touch him inappropriately "every day."  Dkt. No. 35-3 at 25.  Specifically, he said that "she would just violate my personal space.  She would, you know, touch my hand, hold my hand, rub my forearm, grab my shoulder, put her -- put her breasts on my arm when I'm trying to do my work, things of that nature that I -- I just didn't really, you know, it didn't really make sense to me. … And like rub my, yeah, rub my shoulder like oh, how you doing and just kind of rub my shoulder, you know."  *Id.* at 22.  He further testified as follows:

> [S]he would always find herself, you know, rubbing against my -- my butt or I mean, there is plenty of space to walk around me, there is really no reason to be rubbing me. … [S]he just kept literally like leaning on me, when I would sit down and write something or when I would stand on the counter to write something, she would come up to me and literally put her breasts on my shoulder and lean over to look at what I'm doing and pretending to ask questions.  But there is no questions to ask.  I mean, I'm just writing down my last four on all the -- on the my -- my name and under like the ten, you know, fifteen, twenty labels that I'm writing.

Dkt. No. 35-3 at 24-25.  Moreover, the unwanted touching continued after Plaintiff expressed that it made it him uncomfortable.  *See, e.g.*, *id.* at 47-48.  Plaintiff testified that "I told her not to

touch my butt anymore, she told -- she laughed about and try to laugh it off and then touched me again." *Id.* Plaintiff's allegations are the exact type of repeated unwanted touching that the Second Circuit found to be actionable in *Redd*.

Defendant states that the initial internal complaint made by Plaintiff only included less severe conduct, indicating that Sewell and Huddleston were "rubbing on [him] and flirting and that when he did not reciprocate, they started getting offensive." Dkt. No. 32-8 at 11 (internal quotations omitted). Defendant also notes that when Plaintiff was interviewed by an investigator, Plaintiff "merely" alleged that Sewell and Huddleston were "close talking to him, that she rubbed her chest against him, and that when he moved, she followed him" and that "she brushed up against him, and that she did so to make another staffer jealous." *Id.* at 11-12. To the extent that Plaintiff's earlier statement differ from his deposition, such an issue goes to the weight of the evidence. "'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys*, 426 F.3d at 553–54 (quotation omitted). Accordingly, taking all reasonable inferences in the Plaintiff's favor, the Court finds the alleged conduct to be severe.

### 2. Conduct Imputed to Defendant

In addition to establishing that he was subjected to a hostile work environment, the plaintiff must establish that the conduct which created the hostile situation should be imputed to the employer. *Kotcher*, 957 F.2d at 63. "The standards for assessing vicarious liability differ depending on the status of the alleged harasser." *Brown v. City of New York*, No. 11 Civ. 2915, 2013 WL 3789091, *12 (S.D.N.Y. July 19, 2013). "In a situation such as this, 'when the harassment is attributable to a coworker, rather than a supervisor, … the employer will be held liable only for its own negligence.'" *Russell*, 739 Fed. Appx. at 30 (quoting *Duch*, 588 F.3d at

762).[2]  "[T]he plaintiff must demonstrate that the employer 'failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'"  *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch*, 588 F.3d at 762).  "In determining the appropriateness of an employer's response, we look to whether the response was 'immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility [the employer] has with respect to [the employee's] behavior.'"  *Id.* (quoting *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir. 1997)).  "The standard for reviewing the appropriateness of an employer's response to co-worker harassment is essentially a negligence one, and reasonableness depends among other things on the gravity of the harassment alleged." *Id.* at 125.

"'The appropriateness of an employer's remedial action' in response to an employee's complaint of a co-worker's harassment 'must "be assessed from the totality of the circumstances."'"  *Russell*, 739 Fed. Appx. at 30 (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014)).  "An employer cannot be subject to a hostile work environment claim, however, if the 'employer has in good faith taken those measures which are both feasible and reasonable under the circumstances to combat [the] offensive conduct.'"  *Id.* (quoting *Snell v. Suffolk Cty.*, 782 F.2d 1094, 1104 (2d Cir. 1986)).  "Evidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering

---

[2] When the alleged harasser "is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer," although an employer who has not taken a tangible employment action against the employee may be permitted to raise the *Faragher*/*Ellerth* affirmative defense.  *Gorzynski v. JetBlue Airways*, 596 F.3d 93, 103 (2d Cir. 2010).  Here, it is uncontroverted that the two individuals that Plaintiff alleges harassed him were co-workers, not supervisors.  *See* Dkt. No. 35-1 at ¶ 32.

9

complaints, or effectively discouraged complaints from being filed would be relevant." *Vance v. Ball State Univ.*, 570 U.S. 421, 449 (2013).

Here, Defendant argues that it was not negligent because it "provided both a reasonable avenue for Plaintiff to complain and took action as soon as it was made aware of the harassing conduct." Dkt. No. 32-8 at 13-14. The Court agrees that Defendant provided a reasonable avenue for Plaintiff to complain. Defendant has a Code of Conduct, a Non-Discrimination and Equal Opportunity Policy, and a Harassment Prevention Policy that specifically proscribe sexual harassment. *See* Dkt. No. 32-2 at 2-21. These policies provide information regarding the process for reporting conduct that violates the policies. *Id.* at 3-5, 11-12. Moreover, Plaintiff stated that he received sex discrimination training from Defendant. Dkt. No. 35-1 at ¶ 31. Indeed, on December 13, 2018, Plaintiff successfully filed a formal complaint regarding the alleged sexual harassment. *See* Dkt. No. 38-1 at ¶ 136. Accordingly, the Court finds that Defendant provided a "reasonable avenue for complaint." *Summa*, 708 F.3d at 124.

The Court also finds that Defendant did not fail "to take appropriate remedial action." *Id.* Following the complaint on December 13, 2018, Defendant immediately initiated an investigation. Dkt. No. 35-1 at ¶ 68. Investigator Lewis E. Rosenthal interviewed Plaintiff, the two alleged harassing employees, six potential witnesses who worked in the phlebotomy laboratory, and Plaintiff's supervisor. *Id*. at ¶¶ 69, 80. None of the witnesses corroborated Plaintiff's claims of sexual harassment. *Id.* at ¶ 82; Dkt. No. 32-4 at 116. Mr. Rosenthal concluded that "I do not find [Plaintiff's] claims of discrimination to be substantiated." Dkt. No. 32-4 at 117. Accordingly, Defendant took no action against the alleged harassers.

"When determining whether an employer did 'nothing' about a co-employee's alleged harassment, courts analyze the *reasonableness* of the employer's response to the plaintiff's

complaints." *Barton v. Warren Cty.*, No. 1:19CV1061, 2020 WL 4569465, *9 (N.D.N.Y. Aug. 7, 2020) (quoting *Snell v. Suffolk Cty.*, 782 F.2d 1094, 1104 (2d Cir. 1986)) (emphasis in original). "[T]here is no requirement that the remedy include punishing the co-worker responsible for the sexual harassment"; Title VII "simply requires that the remedial action taken be reasonably calculated to end the sexual harassment." *Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, *6 (S.D.N.Y. Mar. 28, 2017) (quoting *Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 495 (S.D.N.Y. 2000)).

Plaintiff fails to argue that a reasonable response would require some type of reprimand of the two alleged harassers.[3]  *See Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("[A] Court need not entertain an argument that was not briefed").  Nonetheless, there is no evidence that Defendant acted unreasonably by failing to take action following its investigation.  Investigator Rosenthal interviewed every possible corroborating witness.  Dkt. No. 32-4 at 116.  His notes are as follows:

> Demetria Huddleston – She was incredulous.  Her shocked response was "What?"  She said it never happened.
>
> Schelitta Sewell – She said it never happened.  She stated that she would never do this in a million years.  She never did this to make her partner Firas jealous.  She noted that all the employees in the [department] work in close quarters and she might bump into him as the result of an accident.
>
> Nitchaborie Jones – He never observed the women phlebotomists being overly friendly.
>
> Karen Vaughan – She never saw it.  She says the idea of it is "almost absurd."

---

[3] Plaintiff instead misconstrues Defendant's argument that the employee's alleged conduct cannot be imputed to it as an assertion of the *Faragher/Ellerth* affirmative defense.  *See* Dkt. No. 35 at 11-13.

> Helki Newton – This "never" happened.  One reason it would not happen is that "people think he's creepy and scary."
>
> Patrick Kraus – It is not true that Shelly and Demetria were intentionally touching him but they do work in close quarters.
>
> Firas Taqi Aldein – He never saw anything like that.

*Id.*

Given the "totality of the circumstances," the Court does not find that Defendant's actions were negligent or unreasonable.  *Russell*, 739 Fed. Appx. at 30.  Defendant "monitor[ed] the workplace," "respond[ed] to complaints" and "provide[d] a system for registering complaints."  *Vance*, 570 U.S. at 449.  Every person the investigator interviewed said the harassment did not occur.  Dkt. No. 32-4 at 116.  "Reasonableness" does not require an employer to reprimand the accused just because a complaint was made.  *See Cooper*, 106 F. Supp. 2d at 495.  "[T]here is no requirement that the remedy include punishing the co-worker responsible for the sexual harassment."  *Id.* at 495.  Based on the evidence in the record, the Court does not find that the two employees' alleged conduct should be imputed to Defendant.  Plaintiff fails to argue that Defendant's actions were unreasonable given the totality of the circumstance, and the Court declines to find it so.  Accordingly, Plaintiff's hostile work environment claim is dismissed.

## C.    Gender and Sexual Discrimination

"Title VII provides that it is 'an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or natural origin.'"  *Meritor Sav. Bank, FSB*, 477 U.S. at 63 (quoting 42 U.S.C. § 2000e–3(a)).  Discrimination claims under Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell*

*Douglas* framework, a plaintiff must first make a *prima facie* case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802).

"Once an employee makes a prima facie case of [discrimination], the burden shifts to the employer to give a legitimate, non-discriminatory reason for its actions." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). If the employer is able to provide such a reason, "the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for race [or sex] discrimination." *Id.* To rebut the articulated justification for the adverse action, "the plaintiff must show 'both that the reason was false, and that discrimination was the real reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 n.4 (1993) (internal quotations omitted). "'[T]he plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation and citation omitted).

Defendant argues that Plaintiff cannot establish a *prima facie* case because he did not suffer an adverse employment action, and if he did, it was not because of his sex or gender. *See* Dkt. No. 32-8 at 17. Defendant also asserts "legitimate non-discriminatory reasons for its decision not to extend Plaintiff's temporary position beyond the scheduled end date." *Id.*

In his response brief, Plaintiff does not address his sex or gender discrimination claim, or Defendant's arguments. Because Plaintiff does not oppose Defendant's motion for summary judgment as to the gender or sex discrimination claim, the Court finds that Plaintiff has

abandoned this claim and grants Defendant's motion for summary judgment. *See Feacher v. Intercontinental Hotels Group*, 563 F. Supp. 2d 389, 399 (N.D.N.Y. 2008); *see also Stokes v. City of New York*, No. 05-CV-007, 2007 WL 1300983, *14 (E.D.N.Y. May 3, 2007) (collecting cases). Regardless, the record provides no indication that Plaintiff's contract was not renewed because he is a male.

### D.     Retaliation

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a)).  In order to present a *prima facie* case of retaliation under Title VII, a plaintiff must present

> "evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII ..., [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action."

*Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (quotation omitted).  "Upon such a showing, the defendant must articulate legitimate non-discriminatory reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive." *Holt v. KMI-Cont'l*, 95 F.3d 123, 130 (2d Cir. 1996).

Defendant argues that Plaintiff did not suffer an adverse employment action.  *See* Dkt. No. 32-8 at 18.  The Court assumes that Plaintiff has met the other elements of its *prima facie* case.

14

Alternatively, Defendant argues that it had a legitimate non-discriminatory reason to not renew Plaintiff's employment contract.  *See id.* at 20.

### 1. Adverse employment action

"An adverse employment action is a materially adverse change in the terms and conditions of employment."  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (citations and quotation marks omitted).  Thus, in order to establish actionable retaliation under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'"  *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  "Material adversity is to be determined objectively, based on the reactions of a reasonable employee," and in context.  *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011).

Within the Second Circuit,

> [e]mployment actions that have been deemed sufficiently disadvantageous to constitute an adverse employment action include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation."  As these examples suggest, "[t]o be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."

*Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal citations omitted) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

Defendant argues that Plaintiff did not suffer an adverse employment action because the failure to renew an employment contract is not a change in terms and conditions of employment. Plaintiff's placement was originally scheduled to end on December 30, 2018, but was extended to

January 31, 2019.  Dkt. No. 35-1 at ¶¶ 25, 26.  Defendant then did not retain Plaintiff after the contract expired on January 31.  *Id.* at ¶ 91.  Defendant contends that "failing to extend a term of temporary employment or to provide permanent employment to a temporary employee is not an adverse employment action."  Dkt. No. 32-8 at 18.

The Court disagrees.  First, to the extent that Defendant alleges it is not liable because it is not Plaintiff's employer, it is mistaken.  Although Plaintiff was an employee of Cynet, "[i]n the context of Title VII, there are two 'recognized doctrines that enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer.'  These doctrines are known as the 'single employer' doctrine, and the 'joint employer' doctrine."  *Shiflett v. Scores Holding Co.*, 601 Fed. Appx. 28, 30 (2d Cir. 2015) (quoting *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)).  Under the joint employer doctrine, an entity other than the employee's official employer may be liable where it "handle[s] certain aspects of their employer-employee relationship jointly."  *Arculeo*, 425 F.3d at 198 (internal quotation marks omitted).  "[F]actors courts have used to examine whether an entity constitutes a joint employer of an individual include commonality of hiring, firing, discipline, pay, insurance, records, and supervision."  *Shiflett*, 601 Fed. Appx. at 30.  Here, Defendant only references that it was not Plaintiff's official employer; it does not argue that it was not a joint employer under Title VII or did not handle any of the relevant factors identified in *Shiflett*.  Taking all inferences in Plaintiff's favor, the Court, therefore, finds that Defendant was Plaintiff's employer pursuant to Title VII.  *See, e.g.*, *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013) (holding that whether two entities were joint employers was a question of fact).

Second, a failure to renew an employee's contract, or to rehire them, has repeatedly been held to constitute an adverse employment action. *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591-92 (2d Cir. 2006) (finding non-renewal of a contract in contravention of an alleged unofficial policy to treat position as tenured professorship to allege adverse employment action); *Caraccilo v. Vill. of Seneca Falls, N.Y.*, 582 F. Supp. 2d 390, 415 n.12 (W.D.N.Y. 2008) (finding the failure to retain the plaintiff after her term "simply expired" could be an adverse employment action to support the plaintiff's First Amendment claim); *Chapkines v. New York Univ.*, No. 02 Civ. 635, 2005 WL 167603, *7 (S.D.N.Y. Jan. 25, 2005) (noting that failure to reappoint an adjunct professor may constitute an adverse employment action at the *prima facie* stage); *Bogues v. Town of Trumbull*, 383 F. Supp. 2d 348, 356 (D. Conn. 2005) (failure to automatically renew the plaintiff's contract, with an invitation to bid for his position, after twenty-six years of automatic renewal could constitute an adverse employment action).

Defendant relies on *Tillman v. Verizon New York, Inc.*, 118 F. Supp. 3d 515 (E.D.N.Y. 2015) to support its contention that allowing the expiration of a temporary employment contract cannot be an adverse employment action. In *Tillman*, the plaintiff was hired by the defendant as a temporary employee for a three-year term and the plaintiff's termination occurred when her "temporary employment was ended and was not extended or made permanent." *Id.* at 534. The court noted that "[t]he record makes clear that Tillman had no reasonable expectation that her employment would extend beyond three years." *Id.* Accordingly, the court held that "discontinuing a temporary worker's employment at the expiration of a fixed three-year period cannot materially [and] adverse[ly] change ... the terms and conditions of that employment." *Id.* (internal quotations and alterations omitted).

17

*Tillman*, however, is inapposite to the current case.  Here, Plaintiff clearly alleges that he had an expectation of continued employment after January 31, 2019.  Plaintiff alleges that in his interview before he began employment he was told that the position was permanent and that it would be "automatically renewed."  Dkt. No. 35-3 at 17.  Indeed, Plaintiff's employment contract was already extended one time.  Taking all reasonable inferences in Plaintiff's favor, the Court finds that he had a reasonable expectation of continued employment.  Accordingly, the decision to not extend his employment contract was an adverse employment action.  *See, e.g.*, *Leibowitz*, 445 F.3d at 592.  Therefore, the Court finds that Plaintiff has established a *prima facie* case of retaliation.

### 2. Legitimate non-discriminatory reason and pretext

Once the plaintiff presents a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Upon the defendant's articulation of a legitimate, non-retaliatory reason, "'the presumption of retaliation dissipates,' and the burden shifts back to the plaintiff to prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'"  *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 (S.D.N.Y. 2020) (citing *Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015)).  The "but-for" causation standard "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

The Second Circuit stated that a plaintiff can establish pretext by

> [d]emonstrat[ing] weaknesses, implausibilities, inconsistencies, or
> contradictions in the employer's proffered legitimate, nonretaliatory
> reasons for its action.  From such discrepancies, a reasonable juror
> could conclude that the explanations were a pretext for a prohibited
> reason.  … Temporal proximity alone is insufficient to defeat
> summary judgment at the pretext stage.  … However, a plaintiff
> may rely on evidence comprising her prima facie case, including
> temporal proximity, together with other evidence such as
> inconsistent employer explanations, to defeat summary judgment at
> that stage.

*Id.* at 846-47 (citations omitted).

Here, Defendant has met its burden of production to establish a legitimate, non-retaliatory

reason for the adverse employment action.  Defendant states that it received "constant complaints

from other staffers of interpersonal conflict between Plaintiff and others in the laboratory."  Dkt.

No. 32-8 at 21.  Defendant further states that "Plaintiff was trying to tell [a supervisor] how to run

the unit, which he found to be inappropriate."  *Id.*  Lastly, Defendant also states that it decided not

to renew Plaintiff's employment contract because Plaintiff had informed it that he intended to take

several months off to study for the MCATs.  *Id.*

Plaintiff asserts that these stated reasons are pretext.  The Court agrees that there is

evidence in the record from which a reasonable juror could conclude that but for Plaintiff's formal

sexual harassment complaint, his employment contract would have been renewed.  Although

temporal proximity alone cannot rebut a legitimate non-discriminatory reason, *see Zann Kwan*,

737 F.3d at 846, the Court notes that the decision not to retain Plaintiff was communicated to him

ten days after he reported the alleged sexual harassment.  Dkt. No. 35-2 at ¶ 91.  Moreover,

Defendant has not produced any records or email correspondences regarding Plaintiff's alleged

behavioral issues, or any complaints made against him by any other staff members.  *See* Dkt. No.

35-3 at 187, 199-200.  Instead, Plaintiff testified that his supervisor informed him he was

terminated because of the complaint that Plaintiff filed. *See* Dkt. No. 35-3 at 67-69. Plaintiff also emailed the investigator, Mr. Rosenthal, on the day he was fired. Plaintiff stated that his supervisor decided to not extend his contract because Plaintiff had "sent him several issues." *Id.* at 140. Lastly, Plaintiff also disputes that he requested significant time off and instead wanted to work two or three days a week. Dkt. No. 35-3 at 203.

Where, as here, "the parties have put forward several alleged causes of the plaintiff's termination: retaliation, unsuitability of skills, poor performance, and inappropriate behavior," the "determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment." *Zann Kwan*, 737 F.3d at 846 n.5. "[I]t requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Id.*; *see also Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 320 (E.D.N.Y. 2014). A reasonable jury could infer that Defendant did not retain Plaintiff because it received "complaints of interpersonal conflicts," such as Plaintiff's sexual harassment complaint. Plaintiff testified that his supervisor stated that "he wasn't going to extend [Plaintiff's] contract … because of [Plaintiff's] complaint." Dkt. No. 35-3 at 68. Moreover, Plaintiff was informed that he would not be retained only ten days after his complaint and contemporaneously reported to Mr. Rosenthal that he was told it was because of his complaint. *Id.* at 140. A reasonable jury, therefore, could conclude that Defendant's proffered reason is pretextual.

## IV. CONCLUSION

After careful review of the record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 32) is **GRANTED in part** and **DENIED in part**;[4] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 26, 2022
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] Defendant's motion for summary judgment is granted as to Plaintiff's hostile work environment and sex or gender discrimination claim and denied as to Plaintiff's retaliation claim.