**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MARIO ZAJA,**

                                    **Plaintiff,**

          **vs.**                                                  **5:20-CV-337**
                                                                   **(MAD/TWD)**

**SUNY UPSTATE MEDICAL UNIVERSITY/UPSTATE**
**HEALTHCARE CENTER,**

                                    **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**JOHN C. LUKE, JR.**                      **JOHN C. LUKE JR., ESQ.**
445 Broad Hollow Road, Suite 419
Melville, New York 11747
Attorneys for Plaintiff

**NEW YORK STATE ATTORNEY**                **JORGE A. RODRIGUEZ, AAG**
**GENERAL – ALBANY**                       **BRITTANY M. HANER, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.   INTRODUCTION**

       On March 24, 2020, Plaintiff Mario Zaja commenced this action against Defendant SUNY

Upstate Medical University/Upstate Healthcare Center.  *See* Dkt. No. 1.  Plaintiff asserts claims

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.  *See id.* at ¶¶ 68-87.  After the

Court granted in part Defendant's motion for summary judgment, Plaintiff's only remaining claim

is for retaliation.  *See id.* at ¶¶ 68-87.

Plaintiff alleges that on December 20, 2018, Defendant's hiring manager fired him in retaliation for making complaints about sexual harassment, "stating that Plaintiff is the problem and that he will not be looking into the matter or reassigning him."  Dkt. No. 1 at ¶¶ 44-45, 83. Plaintiff claims this is unlawful retaliation under Title VII.  *See id.* at ¶ 83 (alleging Defendant was "retaliating against Plaintiff and terminating his employment because he opposed discrimination made unlawful under Title VII").

Trial is scheduled to commence on November 14, 2022, at 1:30PM.  Currently before the Court is Defendant's supplemental motion for summary judgment arguing the case should be dismissed for Plaintiff's failure to exhaust administrative remedies.

Although untimely, in the interest of judicial efficiency and justice, the motion will be allowed, and for the reasons set forth below, this claim is dismissed.

## II.  DISCUSSION

A.      **Preliminary Opposition: Waiver/Forfeiture/Good Cause**

Defendant did not raise exhaustion of administrative remedies in their pre-answer motion to dismiss, which was later withdrawn and replaced with an answer.  *See* Dkt. No. 13-1.  In the answer to the complaint, Defendant stated that "Plaintiff has failed to exhaust administrative remedies."  Dkt. No. 18 at ¶ 18.  Defendant did not argue exhaustion in the motion for summary judgment.  *See* Dkt. No. 32-8.

This case began over two years ago, and AAG Jorge A. Rodriguez has been representing Defendant for more than two years.  *See* Dkt. No. 10.  On October 18, 2022, counsels for Defendant and Plaintiff joined an initial pretrial conference with this Court.  Defendant did not raise exhaustion in the initial pretrial conference.  Defendant did not raise exhaustion again until

the final pretrial telephone conference on November 3, 2022, less than two weeks before the scheduled trial date.

The Court has on more than one occasion advised the Attorney General's office that any motions involving exhaustion should be made sooner rather than later.  In this case, the motion deadlines passed on January 28, 2022.  *See* Dkt. No. 31.  By failing to file a motion on this dispositive issue earlier, the Attorney General's office not only wasted their own time and resources, but also wasted Plaintiff's counsel's time and resources, and this Court's time and resources.  It would be within the right and discretion of this Court to deny this motion and require Defendant go to trial.[1]

Plaintiff argues Defendant's exhaustion argument has been waived.  *See* Dkt. No. 56 at 5. Defendant did not waive nor forfeit this argument.  Federal Rule of Civil Procedure 8(c) requires stating affirmative defenses in responsive pleadings.  As such, an argument raised in an answer is not waived.  *See Villante v. VanDyke*, 93 Fed. Appx. 307, 309 (2d Cir. 2004) ("Accordingly, we conclude that [Defendants], having raised the exhaustion defense in their answer, did not waive the defense by failing to include it in their first motion for summary judgment").  In this case, the Court allowed Defendant to withdraw a motion to dismiss and instead file an answer to the complaint in light of a stipulation by the parties.  *See* Dkt. Nos. 16-18.  The answer included the affirmative defense that "Plaintiff has failed to exhaust administrative remedies."  Dkt. No. 18 at ¶ 18.  Accordingly, Defendant did not waive this affirmative defense.[2]

Plaintiff next argues that Defendant does not have good cause for this untimely motion. Ideally, Defendant would have made this argument in a motion to dismiss before the parties

---

[1] It is also within the Court's discretion to issue sanctions for failure to obey a scheduling order under Rule 16(f)(1)(c) of the Federal Rules of Civil Procedure.

engaged in extensive discovery.  However, under Rule 16 of the Federal Rules of Civil Procedure, "[a] [litigation] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4), 56(b).  Good cause includes considerations of judicial efficiency.  To the extent that this motion might prejudice Plaintiff due to its late filing, the Court emphasizes that to deny this motion would delay the inevitable outcome of dismissal for failure to make a timely complaint to the Equal Employment Opportunity Commission ("EEOC").  As Defendant did not waive this argument, the argument would simply be made at trial.  To better serve judicial efficiency, and save both parties time and resources, Defendant's motion is granted.  However, in recognition of the needless waste of time and resources, the Court orders Defense Counsel to show cause why sanctions should not be imposed.

## B.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36

---

[2] While this supplemental motion for summary judgment was filed after the time for motions had ended, the Court permitted Defendant to file its motion.  *See* Fed. R. Civ. P. 16(b)(4), (c).

(citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).

**C.     Exhaustion**

"There are two prerequisites for filing a Title VII action in federal court; plaintiff must (1) file a timely charge of employment discrimination with the EEOC and (2) receive a notice of the right-to-sue letter." *Coleman v. Board of Educ., et al.*, No. 96 CV 4293, 2002 WL 63555, *3 (S.D.N.Y. Jan. 15, 2002) (citations omitted).  "Because the existence of its State Division of Human Rights makes New York a so-called 'deferral state' for Title VII purposes, an aggrieved employee has 300 days from time when he or she knew or should have known of an adverse employment decision to file a charge of discrimination with the EEOC." *Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 379 (E.D.N.Y. 2000), *aff'd*, 62 Fed. Appx. 28 (2d Cir. 2003) (citing 42 U.S.C. § 2000e–5(e)(1); *Harris v. City of New York*, 186 F.3d 243, 247 & n.2 (2d Cir. 1999)).  Therefore, as Plaintiff filed his EEOC complaint against Defendant on November 22, 2019, Dkt. No. 1 at ¶¶ 11-12, he is "limited to adverse employment decisions that he knew or should have known of within 300 days before that date." *Commodari*, 89 F. Supp. 2d at 379. Plaintiff identifies three different adverse employment decisions: 1) his alleged termination, 2) failure to rehire, and 3) negative referrals.

*1. Termination*

Plaintiff identifies the last day of his employment as the date of the adverse employment action.  *See* Dkt. No. 56 at 3-4.  Defendant claims it is when he was informed of the decision not to renew his temporary employment contract.  *See* Dkt. No. 46-3 at 7.  As the Supreme Court has stated, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."  *Delaware State College v. Ricks*, 449 U.S. 250, 257–58 (1980), *superseded by statute on other grounds*.  As such, the date that Plaintiff became aware of the decision that his contract would not be renewed is the correct accrual date.  *See Commodari*, 89 F. Supp. 2d at 380.  Plaintiff filed his complaint with the EEOC on November 22, 2019, *see* Dkt. No. 1 at ¶ 11, and 300 days before that date was January 26, 2019.  Plaintiff claims that on December 20, 2018, an agent of Defendant "stated to Plaintiff that he will be terminating his employment." *Id.* at ¶ 46.  As such, Plaintiff filed outside of the 300-day window and so failed to exhaust his administrative remedies.  *See* Dkt. No. 46-1 at 4.[3]

Having established this failure, Plaintiff cites *Jordan v. Bates USA*, 4 Fed. Appx. 73 (2d Cir. 2001), in support for his contention that the relevant notice of retaliation was upon the hospital's completion of its investigation rather than upon the initial notice to Plaintiff.  However, according to that case,

> it is well settled that 'the proper focus [in an employment discrimination case] is on the time of the discriminatory act, not the point at which the consequences of the act become painful,' *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L. Ed. 2d 6 (1981), and therefore that 'the timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect.' *O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir. 1985). Indeed, we have expressly stated that '[t]he 300 day period, in the

---

[3] In the notice of right to sue, the EEOC indicated that it was closing Plaintiff's charge because he failed to timely file his charge with the EEOC.  *See* Dkt. No. 46-1 at 4.

case of a discriminatory discharge, starts running on the date when
the employee receives a definite notice of the termination, not upon
his discharge' and that '[t]he notice may be oral.'

*Jordan v. Bates USA*, 4 Fed. Appx. 73, 76 (2d Cir. 2001).  "The 300 day limitations period for

filing a plaintiff's discrimination claims begins to run when the plaintiff was first clearly made

aware of his forthcoming termination[]."  *Id.* at 77.  "In the event of a discriminatory discharge,

the 300–day period commences when the alleged discriminatory decision is made and

communicated to the plaintiff, which may or may not coincide with the date that employment

ended."  *Felder v. Pepsi Cola*, No. 14-CV-4315 NGG, 2015 WL 3447216, *4 (E.D.N.Y. May 6,

2015), *report and recommendation adopted*, 2015 WL 3505002 (E.D.N.Y. May 28, 2015) (citing

*Delaware State College v. Ricks*, 449 U.S. 250, 258, (1980)).  Further, "[g]rievance procedures

and other forms of 'collateral review' of an employment decision do not toll the limitations

period."  *Id.* (citing *Ricks*, 449 U.S. at 261).

        In his opposition, Plaintiff contends that "[i]t was only on January 31, 2019, that Plaintiff

received 'definite notice' of Defendant's intentions regarding his employment.  On that date,

Plaintiff was told 'the matter is now deemed closed.'"  Dkt. No. 57 at 4 (citing Dkt. No. 32-3).

Plaintiff is referring to correspondence he had with Lewis Rosenthal, who was retained as an

independent contractor to conduct investigations into complaints of discrimination and

harassment made to the Office of Diversity and Inclusion at SUNY Upstate Medical

University/Upstate Healthcare Center.  *See* Dkt. No. 32-3 at ¶ 1.  Mr. Rosenthal was initially

contacted by Defendant on December 13, 2018 and asked to investigate an internal complaint by

Plaintiff alleging sexual harassment and retaliation.  *See id.* at ¶ 6.  On January 31, 2019, Mr.

Rosenthal notified Plaintiff "that the investigation had concluded and that there was insufficient

evidence to substantiate his allegations and that the investigation was now closed."  *Id.* at ¶ 52.

On that same date, Mr. Rosenthal sent Plaintiff a copy of his written report by certified mail.  *See*
Dkt. No. 32-4 at 113-21.

The fact that Plaintiff believed that his contract might ultimately be renewed based on the
results of Mr. Rosenthal's investigation does not change the accrual date.  The Supreme Court has
made clear that the accrual date is when "the [termination] decision was made and communicated
to" the employee, even when the date of termination is later than the date of notification.  *See*
*Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).  "The Supreme Court's conclusion that a
discrimination claim accrues upon notice of termination, rather than upon the implementation of
that decision, necessarily implies that the notification of termination qualifies as an adverse
employment action."  *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 305
(2d Cir. 2017).  This fact has led the Second Circuit to conclude that even in situations where an
employer has later rescinded a notice of termination before it has taken effect, the impacted
employee has still plausibly alleged an adverse employment action actionable under Title VII.
*See id.* at 305-06.  Moreover, courts have consistently rejected the argument that Plaintiff makes
here, *i.e.*, that the accrual date for his unlawful termination claim is when he receives notice that
an investigation into the termination has been completed because he could have potentially been
reinstated pending the results of the investigation.  *See Babiker v. Ross Univ. Sch. of Med.*, No.
98-cv-1429, 2000 WL 666342, *9 n.15 (S.D.N.Y. May 19, 2000) (citing cases); *see also Halpern*
*v. Bristol Bd. of Educ.*, 52 F. Supp. 2d 324, 329 (D. Conn. 1999) (holding that the limitations
period on a wrongful termination claim accrued when the employee received notice of the adverse
decision, and the pendency of a grievance, or other method of collateral review, did not toll the
statute of limitations).

Here, the Court finds that Plaintiff was required to file his charge with the EEOC within 300 days of November 20, 2018 – when he received notice of his forthcoming termination – which he failed to do. The fact that Mr. Rosenthal's investigation into his complaints did not conclude until January 31, 2019, does not change this result.

### 2. Failure to Rehire

In his opposition to the supplemental motion for summary judgment, Plaintiff now claims the retaliation was not only the initial "terminat[ion] [of] his employment," Dkt. No. 1 at ¶ 83, but rather that the continuing failure to rehire and "providing a negative reference to Plaintiff's future employers," are also the subject of this dispute and therefore expand the 300-day period. Plaintiff also argues that "whether Defendant's failures to rehire Plaintiff were acts of retaliation for his protected complaints constitute disputes of material fact." Dkt. No. 56 at 4.[4]

As mentioned above, Plaintiff's only remaining claim in this matter is Title VII retaliation. In that cause of action, Plaintiff alleges as follows: "By reason of the foregoing allegations, Defendant employer engaged in an unlawful employment practice prohibited by Title VII, by retaliating against Plaintiff and **terminating his employment** because he opposed discrimination made unlawful under Title VII." Dkt. No. 1 at ¶ 83 (emphasis added). Earlier in his complaint Plaintiff mentions in a single sentence that he "tried to get other jobs at the hospital, but no one has replied to his applications." *Id.* at ¶ 60. This single, conclusory allegation is insufficient to transform his retaliation claim into something more than what was clearly alleged, *i.e.*, that he was discharged from his employment in retaliation for opposing practices made unlawful under Title VII.

---

[4] Note that Plaintiff was not terminated, but rather did not have his temporary employment contract extended.

Even assuming that Plaintiff had alleged in his complaint that Defendant retaliated against him when it failed to rehire him for the unspecified jobs he applied for, his Title VII claim would still fail.  The continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).  However, claims "for termination or failure to promote, are based on 'discrete acts,' each giving rise to a separate cause of action. ...  The law is clear that termination and promotion claims may not be based on discrete acts falling outside the limitations period." *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).  As such, to the extent that Plaintiff is attempting to argue that the failure to rehire him at some unspecified later date constituted a continuing violation, the argument must fail.  *See Grobert v. Career Educ. Corp.*, No. 04-cv-5471, 2006 WL 721357, *2 (E.D.N.Y. Mar. 20, 2006) (rejecting the plaintiff's argument that the defendant failed to rehire her constituted a continuing violation and thereby made her Title VII claims relating to her termination timely) (citing cases).

### 3. Negative References

It is true that "[g]iving negative references or refusing to give positive references in retaliation for a protected activity has also been considered retaliation in violation of Title VII." *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006), *aff'd*, 629 F.3d 276 (2d Cir. 2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005); *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052, 1054 (2d Cir. 1978)).  Plaintiff asserts for the first time in this response that Defendant's acts of retaliation included providing negative references to third parties after he was terminated by Defendant.  There is no mention of these allegations in the complaint.

*See* Dkt. No. 1.  Again, even assuming that Plaintiff had alleged that Defendant's alleged

retaliatory conduct included providing him with negative references after his termination, such

retaliatory conduct would not revive his otherwise untimely retaliatory discharge claim.  As with

a failure to promote or termination, the law is clear that providing a negative reference is

considered a discrete retaliatory act that is insufficient to invoke the continuing violation doctrine.

*See Bamba v. Fenton*, 758 Fed. Appx. 8, 11 (2d Cir. 2018) (holding that the provision of a

negative reference, termination letter, and biased termination appeal hearing were all discrete acts,

insufficient to warrant the application of the continuing violation doctrine).  While these

allegations may have been relevant as background evidence in support of his claim that his

employment was terminated in retaliation for engaging in conduct protected by Title VII, the

evidence of these discrete acts cannot otherwise render his claim timely.

Since Plaintiff failed to file his charge with the EEOC within 300 days of receiving notice

of his forthcoming termination, and because the continuing-violation doctrine is inapplicable to

his claimed retaliatory discharge, the Court finds that Defendant is entitled to summary judgment

on Plaintiff's only remaining claim.  Accordingly, Defendant's motion is granted.

### III. ORDER TO SHOW CAUSE

Federal Rule of Civil Procedure 16(f)(1)(C) allows a district court, on motion or *sua*

*sponte*, to impose sanctions on an attorney who "fails to obey a scheduling or other pretrial order."

The Rule's "'explicit reference to sanctions' reflects the Rule's intention to 'encourage forceful

judicial management'" and "vests a district court with 'discretion to impose whichever sanction it

feels is appropriate under the circumstances.'"  *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d

42, 53 (2d Cir. 2018) (quoting Advisory Committee's notes to 1983 amendment of Fed. R. Civ. P.

16(f)).  A district court's decision to impose sanctions under Rule 16(f) does not require a finding

that the party acted in bad faith.  *See id.*; *see also Rice v. NBCUniversal Media, LLC*, No. 19-CV-447, 2019 WL 3000808, *3 (S.D.N.Y. July 10, 2019).  A district court may impose sanctions under Rule 16(f) when there is "clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order."  *Rice*, 2019 WL 3000808, at *3; *see also S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010); 6A Charles Alan Wright et al., Federal Practice and Procedure § 1531 (3d ed. 2010) (noting "the fact that a pretrial order was violated is sufficient to allow some sanction").  Moreover, "in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses — including attorney's fees — incurred because of any noncompliance with [Rule 16(f)], unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 16(f)(2).

In the present matter, Plaintiff commenced this action on March 24, 2020, and the EEOC issued its right to sue letter on December 26, 2019.  *See* Dkt. No. 1; *see also* Dkt. No. 46-1 at 4.  As mentioned above, in the right to sue letter, the EEOC specifically noted that it was closing its file on Plaintiff's charge because it "was not timely filed with the EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge."  Dkt. No. 46-1 at 4.  Defendant received its copy of the right to sue letter on January 6, 2020.  *See id.*  Despite this information being in Defendant's possession since before this action was commenced, Defendant's counsel waited until the eve of trial to seek dismissal on this ground.

After granting Defendant's request for an extension to the dispositive motion deadline, dispositive motions were required to be filed by January 28, 2022, and the Court specifically directed that "**[n]o further extensions will be granted absent extraordinary cause which shall not include counsel's other litigation and/or trial schedules**."  Dkt. No. 31 (emphasis in

original).  When Defendant moved for summary judgment on January 28, 2022, Defendant did not raise the untimeliness of Plaintiff's EEOC charge.  Instead, Defendant's counsel addressed the merits of each claim and, while it was successful in getting the dismissal of some of Plaintiff's claim, the retaliation claim survived, and a trial date was set.  Then, eleven days before trial was scheduled to commence, Defendant's counsel raised this issue for the first time during the final pretrial conference, and the Court reluctantly granted Defendant's counsel permission to file an expedited second motion for summary judgment – something the Court is loath to do even when not facing an imminent start to trial.

So, in addition to preparing all of his pretrial submissions and engaging in general preparation for trial, Plaintiff's counsel was required to respond to this supplemental motion for summary judgment.  Now that the Court has granted Defendant's motion and dismissed this case, Plaintiff's counsel has wasted an extraordinary amount of time and energy preparing for trial, which is beyond unjust.

In cases of this nature, when exhaustion or other statute of limitations issues are clearly at issue and likely dispositive, the most reasonable course of action is, if it is not clear from the face of the complaint, for the parties to engage in limited discovery on the issue of exhaustion and then move for summary judgment on that issue.  *See Vann v. Persico*, No. 20-cv-628, 2021 WL 1198844, *6 (S.D.N.Y. Mar. 30, 2021) (granting the parties permission to engage in limited discovery on the issue of exhaustion); *Tatas v. Ali Baba's Terrace, Inc.*, No. 19-cv-10595, 2020 WL 2061539, *4-5 (S.D.N.Y. Apr. 29, 2020) (same).  Here, for reasons unknown, this request

was not made, and the parties instead engaged in full discovery and then moved for summary

judgment on the merits, without addressing the issue of exhaustion.[5]

   In light of the countless hours wasted by the Court and Plaintiff's counsel in preparing for

a trial that will not happen, the Court orders that Assistant Attorney General Rodriguez must

show cause why sanctions should not be imposed against him, including potential attorneys' fees

for the time Plaintiff's counsel spent in preparing for trial.  The Court finds that this is also

appropriate because, had Mr. Rodriguez complied with the Court's dispositive motion deadline,

next week could have been used to schedule trial in one of the countless other cases before this

Court that are trial ready.

### IV. CONCLUSION

   After carefully reviewing the entire record in this matter, the parties' submissions, and the

applicable law, the Court hereby

   **ORDERS** that Defendant's motion for summary judgment (Dkt. No. 46) is **GRANTED**;

and the Court further

   **ORDERS** that Assistant Attorney General Jorge Rodriguez shall **SHOW CAUSE**, in

writing, within **FOURTEEN DAYS** of the date of this Memorandum-Decision and Order, why

**SANCTIONS** shall not be imposed against him for his failure to comply with Court orders; and

the Court further

---

[5] The Court notes that the Attorney General's Office has repeatedly failed to raise the issue of
exhaustion until after the expiration of the motion filing deadline, though usually in the context of
inmate litigation under the Prison Litigation Reform Act.  In those instances, the Court has
similarly been required to direct expedited briefing and an exhaustion hearing in order to decide
the issue before a scheduled trial.  While the context may be slightly different, the fact that it
repeatedly happens is no less vexing.  Issues of exhaustion and timeliness are relatively simple
and considerably less complex than dealing with the merits of the underlying claims.  Again, for
reasons unknown, it is entirely unclear why the first question asked by the Assistant Attorney

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor; and the Court further

**ORDERS** that this action shall remain open pending decision on whether sanctions shall be imposed.

**IT IS SO ORDERED.**

Dated:  November 9, 2022
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

Generals assigned to these cases is not inevitably "has the plaintiff exhausted his/her administrative remedies?"